UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tracy L. Jones, *et al.*,

    Plaintiffs,

v.　　　　　　　　　　　　　　　　Case No. 2:16–cv–438

Jon Husted,　　　　　　　　　　　Judge Michael H. Watson

    Defendant.

## OPINION AND ORDER

Plaintiffs move for a temporary restraining order ("TRO") in this election law case. Mot. TRO, ECF No. 2. For the following reasons, the Court **DENIES** Plaintiffs' motion.

## I.　FACTS

The following facts are taken from Plaintiffs' Verified Complaint.

Tracy L. Jones, William S. Booth, Daniel L. Darland, and LaTonya D. Thurman ("Plaintiffs") are the individuals designated on the face of the Ohio Drug Price Relief Act, the initiative petition at issue in this case ("Initiative Petition"), to represent the petitioners in all matters relating to the Initiative Petition. Defendant Jon Husted ("Defendant") is the Ohio Secretary of State and, as such, is the Chief Elections Officer of the State of Ohio. He is sued in his individual and official capacities.

The Ohio Constitution provides for Ohio citizens to propose a law by filing with Defendant an initiative petition:

> When at any time, not less than ten days prior to the commencement of any session of the general assembly, there shall have been filed with the secretary of state a petition signed by three per centum of the electors and verified as herein provided, proposing a law, the full text of which shall have been set forth in such petition, the secretary of state shall transmit the same to the general assembly as soon as it convenes. If said proposed law shall be passed by the general assembly, either as petitioned for or in an amended form, it shall be subject to the referendum. If it shall not be passed, or if it shall be passed in an amended form, or if no action shall be taken thereon within four months from the time it is received by the general assembly, it shall be submitted by the secretary of state to the electors for their approval or rejection, if such submission shall be demanded by supplementary petition verified as herein provided and signed by not less than three per centum of the electors in addition to those signing the original petition, which supplementary petition must be signed and filed with the secretary of state within ninety days after the proposed law shall have been rejected by the general assembly or after the expiration of such term of four months, if no action has been taken thereon, or after the law as passed by the general assembly shall have been filed by the governor in the office of the secretary of state. The proposed law shall be submitted at the next regular or general election occurring subsequent to one hundred twenty-five days after the supplementary petition is filed in the form demanded by such supplementary petition, which form shall be either as first petitioned for or with any amendment or amendments which may have been incorporated therein by either branch or by both branches, of the general assembly.

Ohio Const. art. II, § 1b.

Relevant to the circumstances before the Court, the Ohio Revised Code requires the following petition procedures: Under Ohio Revised Code § 3519.15, after receiving a set of part-petitions, the Secretary of State "shall forthwith separate the part-petitions by counties and transmit such part-petitions to the boards of elections in the respective counties." Thereafter, the counties

complete a report "indicating the sufficiency or insufficiency of such signatures and indicating whether or not each part-petition is properly verified . . . ." *Id.*

> The properly verified part-petitions, together with an electronic copy of the part-petitions, shall be returned to the secretary of state not less than one hundred ten days before the election, provided that, in the case of an initiated law to be presented to the general assembly, the boards shall promptly check and return the petitions together with their report. The secretary of state shall determine the sufficiency of the signatures not later than one hundred five days before the election. The secretary of state promptly shall notify the chairperson of the committee in charge of the circulation as to the sufficiency or insufficiency of the petition and the extent of the insufficiency.

Ohio Rev. Code § 3519.16(E).

On December 22, 2015, Plaintiffs filed part-petitions with Defendant for the Initiative Petition. The next day, Defendant issued Directive 2015-40 to Ohio's eighty-eight county boards of elections ("BOE") regarding the review, examination, and verification of signatures on the part-petitions. Plaintiffs allege the instructions contained in that directive were consistent with instructions from the Secretary of State "for decades." Verif. Compl. ¶ 26, ECF No. 1.

Defendant received certification forms from each county BOE by December 30, 2015. The certification forms certified that the Initiative Petition met the requirements for transmittal to the General Assembly. That evening, however, an attorney e-mailed Defendant's general counsel on behalf of the Pharmaceutical Research and Manufactures of America ("PhRMA"), an opponent of the proposed law, alerting Defendant to PhRMA's perceived deficiencies in the Initiative Petition.

The General Assembly convened on January 5, 2016. Rather than transmit the Initiative Petition to the General Assembly, Defendant, the day before the General Assembly convened, issued Directive 2016-01 to the BOEs. That Directive instructed the BOEs to conduct a re-review of the various part-petitions and to re-certify their findings to his office. It gave the BOEs twenty-five days to do so and specifically instructed the BOEs to review the very issues identified by PhRMA in the December 30th e-mail.

The BOEs, with the exception of the Delaware County BOE, completed their re-review by Friday, January 29, 2016, taking various approaches to the re-review. Most BOEs re-certified the same number of valid signatures from the December 2015 review, a few certified slightly more or slightly less than the number of signatures certified from the December 2015 review, and eleven BOEs invalidated a significant number of signatures based on their interpretation of the issues identified in Directive 2016-01.

Defendant declined to break a tie vote submitted by the Delaware County BOE on whether to count as valid a subset of signatures. As a result, the BOE was unable to submit its re-review certification form to Defendant, and Defendant certified that there were zero valid signatures from Delaware County despite the fact that the BOE had verified a number of valid signatures. Defendant also *sua sponte* invalidated approximately 1,370 part-petitions from Cuyahoga County.

Defendant ultimately certified a sufficient number of valid signatures and transmitted the Initiative Petition to the General Assembly on February 4, 2016.

Plaintiffs allege that Defendant's transmittal letter nevertheless contained an attack on the integrity of the Petition.  They further note that Defendant has repeatedly accused them of filing "too close" to the deadline, thereby compromising the efficacy of the initial review of the Petition.

Plaintiffs allege that the time the BOEs spent re-reviewing the part-petitions delayed the time in which the Initiative Petition was transmitted to the General Assembly.  That delay, they allege, adversely affects the time within which Plaintiffs may gather signatures to file a supplementary petition to gain access to the 2016 General Election ballot should the General Assembly reject or not act on the petition within four months.  Specifically, Plaintiffs allege they will incur additional costs in attempting to gather the requisite number of signatures by July 6, the deadline provided for in the Constitution of Ohio, in time to secure placement of the Initiative Petition on the 2016 General Election ballot.

Plaintiffs seek a declaration that Defendant's issuance of Directive 2016-01 and delay in transmitting the Initiative Petition to the General Assembly violated Plaintiffs' First, Fifth, and Fourteenth Amendment rights.  Plaintiffs further seek preliminary and permanent injunctions prohibiting Defendant from enforcing the July 6 deadline for filing a supplementary petition to secure placement of the Initiative Petition on the 2016 General Election ballot.  They ask the Court to adjust that deadline to account for days lost by the delay in Defendant's transmittal of the Petition to the General Assembly.  Third, Plaintiffs seek

damages including compensation for expenses incurred during the re-review process as well as punitive damages.

## II. PROCEDURAL HISTORY

Plaintiffs filed a similar complaint and motion for a TRO in Case No. 16-cv-38 on January 14, 2016, which they amended on February 3, 2016. On April 19, 2016, the Court dismissed the case without prejudice on the ground that Plaintiffs lacked standing. *Jones v. Husted*, Case No. 16-cv-38, ECF No. 30. Specifically, the Court found that Plaintiffs' alleged injury—not getting the Petition on the 2016 General Election ballot—was entirely speculative because Plaintiffs failed to allege any factual allegations regarding the General Assembly's likelihood of taking any particular action. *See id.* at 10. Indeed, at the time of the Court's Order, it was "entirely possible that the General Assembly [would] pass the Initiative Petition, and Plaintiffs [would] face no need to gather supplemental signatures." *Id.* at 11. The Court further found that Plaintiffs' additional alleged harm—the costs incurred during the re-review process—was not redressable by the injunctive relief sought. *Id.* at 11–12.

The Court therefore dismissed the case "without prejudice to re-filing at such time as the General Assembly's failure to pass the Initiative Petition becomes 'certainly impending'." *Id.* at 12 (citing *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990)).

Additionally, there is currently an action pending in the Supreme Court of Ohio that relates to the instant case. That action, filed on February 29, 2016,

involves PhRMA's challenge to the certification of the Petition. *The Ohio Mfrs' Ass'n v. Ohioans for Drug Price Relief Act*, Case No. 2016-0313. And on June 15, 2016, the Ohio Supreme Court dismissed without prejudice as premature Plaintiffs' mandamus action, filed on March 25, 2016, seeking to recover the signatures invalidated during the re-review process. *State ex. rel. Jones v. Husted*, Case No. 2016-0455.

Plaintiffs filed the instant action on May 16, 2016. On the same day, Plaintiffs moved for a TRO requesting to extend the July 6, 2016 deadline for filing a supplementary petition by thirty days until the Court rules on Plaintiffs' anticipated motion for a preliminary injunction. ECF No. 2.

### III. STANDARD OF REVIEW

Plaintiffs seek injunctive relief pursuant to Federal Rule of Civil Procedure 65. In determining whether to grant such relief, the Court considers four factors: (1) whether the movant has established a substantial probability of success on the merits; (2) whether the movant would suffer irreparable harm in the absence of an injunction; (3) whether an injunction would substantially harm third parties; and (4) whether an injunction would serve the public interest. *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010). The factors are not prerequisites; rather, they must be balanced in weighing the equities involved. *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004).

## IV.    ANALYSIS

Plaintiffs ask the Court to lengthen the time required to submit the supplementary petition to the Secretary of State.  See Mot. TRO 17, ECF No. 2. In so doing, Plaintiffs ask the Court to find that they have a right to try to have the Initiative Petition be on the November 8, 2016 ballot.  See id. ("which would effectively deny Plaintiffs the right to seek to be placed on the November 8, 2016 general election ballot").  More specifically, under the "irreparable injury" analysis, Plaintiffs argue that "the reduction in time would make it incredibly—and perhaps, cost-prohibitively—expensive for Plaintiffs to seek placement on the November 8, 2016 ballot." Id.  The reduced time to circulate the supplementary petition would also "greatly increas[e] the risk of failure" and result in Plaintiffs missing the deadline for the November 8, 2016 ballot, particularly in light of Ohio's time-intensive requirement that the petition be scanned and submitted electronically. Id. at 18.

Plaintiffs would undoubtedly be harmed by incurring additional expense in circulating the supplementary petition, or if the initiative cannot appear on their preferred November 8, 2016 ballot.  The extent of that harm, however, is neither great nor irreparable.

With respect to expense, Plaintiffs have not quantified the extra expense they expect to incur were the Court to deny the TRO.  The evidence presented in their affidavit is only that the overall expense will increase "by at least twice as much," but they do not establish what this amount would be, whether they would

be able to cover the amount, or whether it would prevent them from progressing. Mot., Ex. 1, ECF No. 2-1. Further, "[m]onetary damages do not generally constitute irreparable harm." *Manakee Prof'l Med. Transfer Serv. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995). This is particularly true in cases where, like here, plaintiffs could ask the court to award them monetary damages. *See, e.g., Travis v. Pennyrile Rural Elec. Coop.*, 399 F.2d 726, 729–30 (6th Cir. 1968) (affirming district court's denial of injunction because monetary damages are available).

Further, even if the initiative could not appear on the November 8, 2016 ballot—due to expense, time constraints, or some other reason—the harm to Plaintiffs would neither be severe nor wholly irreparable. If Plaintiffs do not meet the deadline for the fall election, the Initiative Petition could appear on some other, later ballot. As a general matter, Plaintiffs do not have a constitutional right for the initiative to appear on any ballot, far less any particular ballot. *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993) ("[T]he [United States] Constitution does not require a state to create an initiative procedure . . . ."); *see also Gibson v. Firestone*, 741 F.2d 1268, 1273 (11th Cir. 1984) ("[A]ppellants can claim no [federal] constitutionally-protected right to place issues before the Florida electorate . . . ."); *Fla. Hometown Dem., Inc. v. Browning*, No. 4:08–cv–373, 2008 WL 4081174, at *7–10, (N.D. Fla. Aug.

28, 2008) (applying *Gibson* to a situation similar to that which is before the Court).[1]

While Plaintiffs clearly prefer to appear on the November presidential-election ballot for strategic reasons, any other ballot would afford them with the same opportunity to reach the electorate.

For this same reason, the public interest will not be harmed if the Initiative Petition does not appear on the November ballot. The public would still have its chance to weigh in on the initiative, only in a later election.

For these reasons, the Court **DENIES** Plaintiffs' motion for a TRO.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
MICHAEL H. WATSON, JUDGE
**UNITED STATES DISTRICT COURT**

---

[1] The Court is mindful that in *Taxpayers United for Assessment Cuts*, the Sixth Circuit found that "if [a state] creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution; therefore, we conclude, as did the district court, that the plaintiffs have stated a colorable claim under § 1983, giving the district court jurisdiction over this action." *Id.* at 295. However, the Court is not here ruling on the merits of the claim; rather, the Court's denial of Plaintiffs' motion for a temporary restraining order does not hinge on a ruling on the likelihood of success of Plaintiffs' claims, although the Court is skeptical on that point. The Court's balancing analysis is premised, largely, on a finding that Plaintiffs have failed to show irreparable harm.